Bill in Equity. —
The daughter of Elizabeth Jones *Page 5 
lived with her several years, and married Click at the age of sixteen or seventeen years. And the son of Elizabeth Jones obtained for his mother, from Click, a bill single for $336, or thereabouts, payable one day after date, and dated the 10th of August, 1808. She assigned to Gillespie on the 24th of the same month. He commenced an action of debt against Click, and recovered. The plea put in by Click's counsel was, "that the bill single was obtained from him by duress of imprisonment," and the evidence on the trial proved only duress by threats to kill, and so was not suitable to the plea. This, however, is only on the amended bill, not served upon the defendant Jones, nor answered by her, but upon Gillespie only. There being a verdict against the defendant at law, he moved for a new trial, and to amend the pleadings, but was refused by the Court. One witness now proved that, when the bill single was executed, Christopher Jones, the son of Elizabeth, came to the house of Click with a knife in his hand, and threatened to cut the throat of Click if he would not execute the bill single; and made many other threats, and that thereupon Click executed; that several men were there at the time, whom the witness named. Stout, one of the subscribing witnesses, who now lives in Washington county; Willet, another subscribing witness, hath removed to distant parts; one Click, a brother of the obligor, was also there, and he having lately returned from the army, lives also in some of the adjacent counties. She did not hear Christopher Jones say for what he claimed the bond in behalf of his mother. Another witness, a few days after the execution of the bill single, heard Christopher Jones admit that he had used the means spoken of by the other witness to obtain the execution of the bond. And some days after that he also heard Gillespie advise Mitchell not to take an assignment of the bond, for that it was fraudulent. And on the same evening *Page 6 
the witness says he obtained it himself. He first brought an action against Mrs. Jones and afterwards against Click; and when sued, she stated to Gillespie that he had contrived to have the bond executed and then assigned to himself. When she, but for him, would never have claimed it or any thing of her daughter; to which he said nothing. But the witness says he had not time to reply, her discourse being incessant during the time the witness heard her. The daughter, it is proved, lived with her four or five years. She had a guardian, he deposes that he did not expect a charge to be made by the mother. The daughter was not sent to school long enough to read; she worked industriously whilst with her mother, and was clothed indifferently. The Court think, upon this part of the evidence, that she was not indebted to the mother. These are the facts; what questions do they raise?
First, was this bond procured by threats? for if not, it was voluntary and binding both in law and equity. The objection of the want of consideration can not be urged against a voluntary bond, or in any case save only that, where a consideration was expected and fails. The threats are proved by one witness; her evidence is not clear and satisfactory. She does not detail circumstances. She relates only the naked fact. Christopher Jones's confession is confirmatory of her testimony, but the admissions of an agent after he is functus officio are not sufficient. Peake, 18, and the notes subjoined. He ought to be sworn. Here the agent is dead, and has not been sworn. But still she is confirmed by circumstances. Others prove that there was no consideration, and Click having run off to be married, might be, and probably was, apprehensive of his wife's family, and of Christopher Jones, who was a person of violent and dangerous temper. That is in evidence. And besides all this, Stout is not *Page 7 
produced. The obligee, or assignee of the obligee, ought to have produced him, to show the fairness of the execution of the bill single impeached by this suit in equity. The observations of Mrs. Jones, attributing the procurement of the bill single to the machinations of Gillespie, and admitting that without them she had no charge to make against her daughter, indicate some steps taken which were not consistent, in her opinion, with rectitude. All these circumstances, independent of the agent's confessions, are so far confirmatory of the female witness as to render it solid enough to be rested on by the Court. And the more so as she is not impeached as to character by any other witness, though her neighbors, many of them, were present at her examination. It is said Mr. Gillespie has been put off his guard by the declarations of Click's counsel, that they did not expect to get a decree against him. They did say so at the last term or before, but would not, when applied to, dismiss the bill as to him. And they did not then know of the evidence implicating Gillespie, which was delivered on this hearing. But take the statements of Gillespie as made in his answer to be true, and they apply only to promises of payment made by Click after the assignment in the lifetime of Christopher Jones, not to the circumstances of the execution precedent thereto. The evidence then which he could be allowed to produce, would not affect the point now under consideration. The conclusion is that the execution of the bill single was extorted by threats.
Secondly, can the complainant be relieved in equity? The general rule is, that if a defendant can be sued, either at law or in equity, and can make his defence as effectually in one court as the other, and is sued) at law and makes it. there, that he can not afterwards come into equity except upon peculiar circumstances arising out of the trial and judgment, *Page 8 
not upon the ground merely that he could defend in both courts and had not made his defence in that in which he had been first sued. Such an option is allowable only in case of ejectment, where one verdict and judgment is not a bar, as it is in other cases, to a new action. There if the plaintiff's claim be both equitable and legal, he may the second time elect to proceed in equity, and not at law, as he did before. When he can sue the second time without being barred by the former judgment, why not sue in equity as well as in law? But, in this State, This general rule is departed from, where the Court sees that the defendant has a valid legal defence, and has intended to make it, both he and his counsel, and not to act so as to cause delay. And by some mistake of the counsel, the pleadings have not been calculated to bring it forward; by which means the cause is not tried upon its merits, there a court of equity in this State will entertain the cause, for the purpose of letting the merits prevail. Our courts depart from the general rule in such cases, in consideration of the difference of practice in this State and in England. We consider that our practitioners are hurried from court to court, and have not the ready access to books, nor the same time for reflection, as the practitioners in England have. And that therefore the general rules which originated there can not be rigidly applied here without producing injustice. The case in Cooke's Reports decided at Nashville, this court has overruled on the last circuit, in two different cases: one at Carthage, the other at Nashville. We do not consider ourselves bound by it. In this case the defendant at law stated the circumstances of his case to his counsel, he put in a plea which did not so exactly fit the evidence as to render it admissible and proper for the issue, and therefore the defendant failed in his defence. He was not studious of delay. His counsel did not mean it. No circumstances *Page 9 
throw upon the transaction any just suspicion of this sort; and therefore we feel at liberty to deviate so far only from the general rule as to let in an examination of the merits. If any such suspicion could fairly be raised, we would inflexibly adhere to the general rule. The complainant ought to be relieved as against Mrs. Jones.
The third question is, ought he also to be relieved as against Gillespie? The circumstance of his being an assignee after the day of payment elapsed, is enough to decide this question in the affirmative; and his conversation with Mitchell renders it wholly unequivocal. The complainant must be relieved against him also. The promises of payment made by Click after the assignment, are of no avail to him; these did not induce the assignment, they were not the cause of Gillespie's taking it, and probably, also, were induced by the dread of Christopher Jones' resentment. Gillespie had devised the plan as Mrs. Jones said, and he did not deny, before that bill single was executed, and he had resolved upon it when he gave his advice to Mitchell.
Decree, that the clerk and master shall ascertain and report to this Court tomorrow morning, the sums received by the defendant, Gillespie, upon his judgment at law against the plaintiff, together with the interest thereon to this time, and the amount of the costs at law, together with interest to this time. And that the defendant, Gillespie, shall pay the same to complainant, within three months, otherwise the plaintiff to have execution for the same against him. And that the defendant, Elizabeth Jones, also shall be liable in the case of his default, to the payment of such part of said sums as shall not be paid by the defendant Gillespie.